UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-cv-256-KSF

CURRY DEDMAN, et al.                                              PLAINTIFFS

vs.                              **OPINION AND ORDER**

CITY OF HARRODSBURG, et al.                                      DEFENDANTS

* * * * * * * *

This matter is before the Court on the motion of Defendants to dismiss Plaintiffs' Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Plaintiffs have every reason to be furious with the City of Harrodsburg and its police department. It is inconceivable to this Court that public officials for the City of Harrodsburg could be so callous and indifferent to the needs of their citizens. The Court has difficulty fathoming any legitimate excuse for the police repeatedly failing to enforce state and local laws and making these Plaintiffs and their neighbors miserable in their own homes. However, Plaintiffs' claims do not rise to the level of federal constitutional violations. For the reasons discussed below, Defendants' motion to dismiss will be granted.

I.     BACKGROUND

Plaintiffs Curry and Leslie Dedman have resided at 570 Beaumont Avenue, Harrodsburg, Kentucky, for thirty years. The area is zoned as a "medium density residential area" or R-2. Adjacent to the Dedman's house and lot is a Greek revival house known as "Aspen Hall Manor," which has been owned and operated since 2006 by Andrew and Jill Romero as a bed and breakfast, tearoom, and location for private parties and weddings. [Complaint].[1]

---

[1] For a motion to dismiss, all allegations in Plaintiffs' Complaint are presumed true.

On July 27, 2009, Plaintiffs filed this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Harrodsburg, four City Commissioners, the Chief of Police and the City Ordinance Enforcement Officer of the Police Department (collectively "Harrodsburg"), alleging a "conscious indifference" to the use of Aspen Hall Manor, which Plaintiffs claim is in violation of state statutes, safety regulations and the nuisance ordinances of the City of Harrodsburg. [Complaint ¶ 1]. Plaintiffs allege that such use interferes with Plaintiffs' use and enjoyment of their property, has resulted in a taking of Plaintiffs' property in violation of due process and equal protection of the laws and Plaintiffs' rights to privacy, and violates their right to freedom from excessive interference with their quiet enjoyment of their property. *Id.* Plaintiffs' Complaint lists 177 separate incidents that they claim violate various statutes and ordinances. [Complaint ¶ 28]. Of this total, 133 incidents occurred before July 27, 2008. [DE 12, p. 10]. Those 133 incidents resulted in 19 calls to the police or city commissioners by the Dedmans and 6 calls by neighbors. *Id.* The list of incidents begins February 2, 2006 and ends July 12, 2009. [Complaint ¶ 28]. Among the incidents for which the police were called were the blocking of Aspen Hall Drive (a public street), blocking of the Dedmans' driveway, boisterous gatherings late at night with heavy drinking and loud sound systems, blocking of a fire lane, trespassing on Plaintiffs' lawn, smashing of their car window, and threats of bodily harm from the Romeros. [DE 6, pp. 4-8]. Despite the many calls to the police and city commissioners, Plaintiffs allege that the police have refused to take any action against the Romeros and exhibited a policy of conscious indifference to Plaintiffs' complaints.

Harrodsburg acknowledges that Plaintiffs have serious issues with their neighbors, but denies that it may be held liable for the conduct of the Romeros. [DE 12, p. 1]. Harrodsburg moved to dismiss all claims on the grounds that they were barred by the statute of limitations, that Plaintiffs' claims do not constitute federal constitutional violations, and that the Defendants are entitled to qualified immunity.

**II.     ANALYSIS**

    **A.     Standard for Motion to Dismiss**

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *abrogating Conley v. Gibson*, 355 U.S. 41 (1957). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (same). In ruling upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), all of a plaintiff's allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005).

    **B.     Municipal Liability**

While municipalities are not typically encompassed by § 1983, the Supreme Court held that municipalities may be subject to liability where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officer" or a "governmental custom." *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1961). Plaintiffs allege that the refusal of local government officials to act, despite many complaints, constitutes a "custom" or unwritten policy of "conscious indifference" that resulted in deprivation of their fundamental federal constitutional rights. Plaintiffs argue very persuasively under *Monell* that they demonstrated a policy of conscious indifference under the facts. It is not necessary for this Court to decide that issue, however, since Plaintiffs' claims fail on other grounds.

    **C.     Plaintiffs' Claims of Constitutional Violations**

An essential element of a § 1983 claim is deprivation of a federal constitutional right.

> Section 1983 authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" that occur under color of state law. The statute is thus limited to deprivations of *federal* statutory and

3

constitutional rights. It does not cover official conduct that allegedly violates *state* law.

*Huron Valley Hospital, Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989); *Nelson v. All American Homes of Tennessee*, 2008 WL 1745169 at *3 (E.D. Ky. 2008). Plaintiffs' claims of failure to enforce state laws and city ordinances do not state a § 1983 claim unless they constitute violations of federal constitutional rights. Plaintiffs allege violations of their right to privacy; their right to equal protection under the laws; their right to liberty; and their right not to have property taken, confiscated, or diminished without due process. [DE 6]. Each is considered in turn.

    1.    Privacy

Two types of constitutional privacy claims are recognized under federal law – the disclosure of personal matters, which is not implicated here, and "independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600, n. 26 (1977). The Sixth Circuit has limited this latter interest to "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). There is no allegation of affirmative conduct by Harrodsburg that interferes with the Plaintiffs' family relationships. They have failed to state a claim on this ground.

Plaintiffs cite acts by the Romeros that interfere with their privacy and quiet enjoyment and argue that Harrodsburg violated the Due Process Clause by not preventing those acts. The Due Process Clause, however, is intended "to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989).

    2.    Equal Protection Under the Law

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1424 (6th Cir. 1996). Plaintiffs here do not allege membership in any protected class.

4

Where there is no suspect class, a rational basis review is applied, meaning a plaintiff must show the policy "is not rationally related to any conceivable legitimate legislative purpose." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). "The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data." *Id.* "Under rational basis review, a plaintiff faces a severe burden and must 'negate all possible rational justifications for the distinction.'" *Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 770 (6th Cir. 2005).

In the present case, the more fundamental flaw in Plaintiffs' Complaint is that it fails to allege sufficient facts to support a plausible claim of denial of equal protection. The Complaint includes legal conclusions of a denial of equal protection (Counts III and IV), but fails to make factual allegations that there are similarly situated property owners who are treated differently. Plaintiffs' responsive memorandum appears to be making a "class of one" argument regarding "unjust and illegal distinctions between persons in similar circumstances." [DE 6, p. 30]. Equal protection claims by a "class of one" may proceed where there are factual allegations that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Once again, Plaintiffs' Complaint does not make factual allegations of similarly situated individuals who are being treated differently without any rational basis. "Although we must accept all of the complaint's factual allegations as true, we 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) *(*quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987)).

      3.    <u>Liberty Interest</u>

Plaintiffs toss the word "liberty" about in paragraphs 10, 46, 58 and 64 of their Complaint, but never distinguish it from their claims of a right to "due process," "equal protection" or "privacy and quiet enjoyment." [Complaint ¶¶ 46, 58, 64]. Plaintiffs' response combines privacy and quiet

5

enjoyment with liberty: "Privacy and quiet enjoyment are among those fundamental rights that are 'implicit in the concept of ordered liberty.'" [DE 6, p. 33]. To the extent Plaintiffs are making a privacy argument under other terminology, it fails for the same reasons that their privacy claim fails. *See also Cartwright v. City of Marine City*, 336 F.3d 487, 492 (6th Cir. 2003) ("a violation of a state statute does not create a liberty interest or property right under the Due Process Clause.")

4. Taking of Property

Plaintiffs claim the Romeros' conduct constitutes a nuisance and argue that Harrodsburg has violated statutes and ordinances designed to protect citizens from nuisances. [DE 6, p. 3]. Plaintiffs contend the value of their property has been destroyed as a result. [*Id*. at 29]. They say it is as though their property has been condemned without due process. [*Id.* at 32].

The Sixth Circuit has cautioned that a taking claim should be analyzed under the takings clause, rather than under a due process analysis. "Because of the highly destructive potential of overextending substantive due process protection, and because the doctrine's borders are so undefined, the Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff. The takings clause itself addresses whether and under what circumstances the government may take an individual's private property...." *Montgomery v Carter County, Tennessee*, 226 F.3d 758, 769 (6th Cir. 2000) (citations omitted). Accordingly, Plaintiffs' claim of a taking of their property is analyzed under the takings clause.

"The clearest sort of taking occurs when the government encroaches upon or occupies private land for its own proposed use." *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001). Plaintiffs have not alleged any government encroachment upon or occupation of their land for public use. The other class of taking cases involves regulation of property, in which case "compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly

6

singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee v. City of Escondido, California*, 503 U.S. 519, 522-523 (1992). There is no regulation of Plaintiffs' use of its property here. Even if there were, "the mere diminution in value of property, standing alone, is not sufficient to constitute a taking." *Calvert Investments, Inc. v. Louisville and Jefferson County Metropolitan Sewer District*, 847 F.2d 304, 309 (1988). As the court noted in *Calvert*, if there has been some injury as a result of trespass or nuisance, Plaintiffs have "a remedy in state court," but have "no federal cause of action under 42 U.S.C. § 1983 for the injuries it claims." *Id.* at 310.

        5.       <u>Substantive Due Process and State-Created Danger Exception</u>

Defendants moved to dismiss Plaintiffs' claim of a denial of substantive due process based on *Schroder v. City of Fort Thomas*, 412 F.3d 724 (6th Cir. 2005), where the court said:

> [T]he Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution "generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."

*Id.* at 727, quoting *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989). In *Schroder*, the plaintiffs' ten-year-old son was killed in front of their house by a motorist driving 40 miles per hour in a 25 mile-per-hour zone. *Id.* at 725. Various residents had complained periodically over the years that the speed limit was not being observed. *Id.* at 726. Mrs. Schroder complained on several occasions over a period of four years that the street was being used as a "cut-through" between busier streets and that the speed limit was routinely exceeded. No action was taken by the police except to remove signs posted by residents indicating a 15 mile-per-hour speed limit because children were playing. Following the accident, the City lowered the speed limit to 15 miles per hour. *Id.* The Schroders filed a § 1983 action against the City and several of its officials, alleging that the City's failure to maintain safe conditions on the street violated their son's substantive due process rights. The Sixth Circuit affirmed summary judgment in favor of the defendants.

Plaintiffs attempt to distinguish *Schroder* by claiming it "involv[ed] one fatal accident allegedly the result of the failure of the municipality to police one speed zone at the time the accident occurred." [DE 6, p. 22]. Plaintiffs call this "a single instance of inattention," as opposed to a policy of conscious indifference in their case. *Id.* The *Schroder* decision refutes Plaintiffs' distinction. The court noted that the City had been warned about the risks of the 25 mile-per-hour limit and that "it could be suggested that the City exhibited deliberate indifference to these warnings." Rejecting this argument, the court said: "It is in the very nature of deliberative bodies to choose between and among competing policy options, and yet a substantive due process violation does not arise whenever the government's choice prompts a known risk to come to pass." *Id.* at 729. The court noted the limited resources of the City's budget and observed that "the choice to ramp up enforcement of the 25 mile-per-hour speed limit on Garrison Avenue assuredly would have meant decreased enforcement of other public safety laws." *Id.* at 730.

> These considerations go a long way to explaining why our cases stress that, where a plaintiff claims that a non-custodial substantive due process violation has occurred because of the government's deliberate indifference, something more must be shown – a something that we have variously described as "callous disregard for the risk of injury," or action "in an arbitrary manner that 'shocks the conscience' or that indicates an intent to injure." That additional element – be it termed callous disregard or intent to injure – ensures that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"

*Id.*, internal citations omitted.

A similar claim of failure to protect was involved in *DeShaney, supra*. The state Social Services Department was monitoring a young boy after returning him to the custody of his father. They were aware of numerous occasions over a two-year time frame when the child suffered multiple bruises and abrasions that were reported as suspicious, but they took no action to remove the child from the father's custody. Eventually, the father beat the boy so severely that, at age four, he was confined to an institution for the profoundly retarded. Despite that factual history, the Supreme Court said "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause

8

is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney,* 489 U.S. at 195-196. To emphasize the point, the court continued: "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. It added: "our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.*

Recently, the Sixth Circuit emphasized that "[w]here a claimant accuses government officials of failing to prevent one private party from injuring another, *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and its progeny seldom permit the claim to proceed." *Koulta v. Merceiz*, 477 F.3d 442, 443 (6th Cir. 2007). The court reiterated the elements of the "state-created danger" exception to the rule in *DeShaney*.

> Under our exception: When the State "causes or greatly increases the risk of harm to its citizens ... through its own affirmative acts," it has established a "special danger" and a corresponding duty to protect its citizens from that risk. An individual wishing to bring a claim under this second exception, what has come to be known as a "state-created danger" claim, must show three things: "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff."

*Id.* at 445. It then clarified the first element, saying the focus should be on "whether the victim was safer before the state action than he was after it." *Id.* at 446. When there is no conduct "by the state which either created or increased the risk" of harm, the officers' conduct should be considered as "falling on the inaction side of the line." *Id.*, internal citations omitted. *See also Cartwright v. City of Marine City*, 336 F.3d at 493 ("failure to act is not an affirmative act under the state-created danger theory"); *Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006) (failure to stop an illegal drag race was not an affirmative act); *Jones v. Union County*, 296 F.3d 417, 431 (6th Cir. 2002) (failing to serve an ex parte protection order on an abusive spouse was not an affirmative act);

9

*Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000) (failing to call an ambulance for an obviously injured citizen was not an affirmative act.).

Under these authorities, Plaintiffs' claim must fail. Plaintiffs have not alleged and cannot make a plausible claim that they were safer before Harrodsburg ignored their complaints than they were after. *Koulta*, 477 F.3d at 446. Thus, there is no affirmative act by Harrodsburg "which either created or increased the risk" of harm. Plaintiffs also have failed to show a "callous disregard or intent to injure" on the part of Harrodsburg. *Schroder*, 412 F.3d at 730. Plaintiffs cannot satisfy the first element of a due process claim. There is no need to consider any other elements.

### D.     Statute of Limitations

Defendants also move to dismiss all of Plaintiffs' claims as barred by the statute of limitations. The parties agree that, in Kentucky, the applicable limitations period is one year under KRS 413.140. [DE 6, p. 12]. They further agree that "federal standards govern when the statute begins to run." [*Id.* at 15]. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). "It is 'the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388, quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997).

Plaintiffs cite *King v. Gillis*, 1996 WL 671385 (6th Cir. 1996), for when a cause of action accrues, but that case deals with tolling of the limitations period for persons of unsound mind and has no applicability here. Plaintiffs argue that they could not bring their claim until they could establish a "custom" and that a single failure to enforce an ordinance is not enough. [DE 6, p. 16]. Defendants respond that Plaintiffs were well aware of far more than a single failure to respond more than a year before they filed their complaint. [DE 12, p. 10]. It is also noteworthy that *Monell*

states that a custom may be shown "even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 691.

The Sixth Circuit addressed the discovery rule and accrual of limitations in *Sharpe*.

> Ordinarily, the "discovery rule" applies to establish the date on which the statute of limitations begins to run, i.e., the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action. This test is an objective one, and the Court determines "what event should have alerted the typical lay person to protect his or her rights."

*Sharpe*, 319 F.3d at 266, internal citations omitted. Defendants observe that, more than one year before filing their complaint, Plaintiffs had documented 133 separate incidents and had made more than 17 complaints to the police or city commissioners, but Harrodsburg ignored the complaints. [DE 12, p. 10]. During this time, Plaintiffs allege six calls to police or city officials by their neighbors, but there was the same failure to act. *Id.* Accordingly, Defendants argue that Plaintiffs "had more than sufficient notice of a pattern of indifference by July 22, 2008, more than one year before they filed suit." *Id.* at 11. By comparison, *Lowe v. Brown*, 896 F. Supp. 793 (N.D. Ill. 1995), a case on which Plaintiffs rely, involved only 13 incidents, but was sufficient to allege a policy of deliberate indifference. Plaintiffs also note the period of time involved in *Lowe* case, but the opinion never mentions a statute of limitations issue being raised. [DE 6, p. 19].

In their Complaint, Plaintiffs provide further evidence they knew before July 2008 that they could file suit and obtain relief for a pattern or custom. More than a year before filing the Complaint, Plaintiffs consulted counsel who wrote the City Attorney on June 17, 2008: "What is of concern to my clients and me is that the City of Harrodsburg offers no help whatsoever; in spite of being called repeatedly, the Police either do not appear at all, or, if they appear, it is too late and they do nothing to stop the Romeros from continuing to violate the City's ordinances. I am personally concerned that the matter is fast coming to a head, leaving me no alternative but to file suit against ... the City of Harrodsburg." Complaint, Exhibit B.

11

In *Bishop v. Lucent Technologies, Inc.* 520 F.3d 516 (6th Cir. 2008), the court considered a complaint that was silent regarding when the plaintiffs had actual knowledge that they had been wronged. The court said:

> [I]t is not enough for plaintiffs to argue that the complaint, because it is silent as to when they first acquired actual knowledge, must be read in the light most favorable to them and construed as not precluding the possibility that they will be able to prove facts establishing their entitlement to relief. The obligation to plead facts in avoidance of the statute of limitations defense is triggered by the fact that "it is apparent from the face of the complaint that the time limit for bringing the claims has passed."

*Id.* at 520.

It is the opinion of this Court that reasonable minds could not differ that the Dedmans knew or should have known that they had a complete and present cause of action more than one year before they filed their Complaint. Accordingly, Plaintiffs' claims are barred by Kentucky's one-year statute of limitations.

## II.     CONCLUSION

**IT IS ORDERED** that Defendants' motion to dismiss [DE 3] is **GRANTED**. Judgment in favor of Defendants shall be entered contemporaneously with this Opinion and Order. Plaintiffs' motion for hearing on the motion to dismiss [DE 9] is **DENIED AS MOOT**.

This March 22, 2010.



Signed By:

*Karl S. Forester*  KSF

**United States Senior Judge**